UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

TIANTE LAVONNE REED, #1201321

        Petitioner,

v.                                         Civil No. 2:12CV148

SIR HAROLD CLARKE,
Director, Virginia Department of Corrections,

        Respondent.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Tiante Reed seeks a writ of habeas corpus to resolve alleged constitutional errors underlying his state conviction on murder and other charges. The respondent moved to dismiss Reed's petition, and the matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. Because the Virginia decisions rejecting Reed's claims are not based on any unreasonable determination of fact, or contrary to federal law, the undersigned recommends that the respondent's motion be GRANTED, and the petition DISMISSED.

## I. STATEMENT OF THE CASE

On April 23, 2007, following a jury trial, the Circuit Court for the City of Richmond convicted Reed of first-degree murder, shooting into an occupied vehicle, and use of a firearm in commission of murder. (ECF No. 7-1). The Court sentenced him to fifty-three years in prison

1

with twenty-three years suspended. Id. He received forty years on the murder charge with fifteen years suspended, ten years on the shooting into an occupied vehicle charge with eight years suspended, and three years on the use of a firearm charge. Id. Reed appealed to the Court of Appeals of Virginia challenging the sufficiency of the evidence on the murder charge, and claiming violations of due process. Specifically, he alleged the police acted in bad faith and that the trial court erred in refusing to allow him to cross-examine a witness, Jamal Rogers, concerning a misdemeanor conviction. (ECF No. 7-2). A single judge of the Court denied his appeal on the merits. Id. A three-judge panel of the Court of Appeals also denied Reed's petition for appeal and upheld the prior order. (ECF No. 7-3).

On August 25, 2009, Reed filed a state habeas petition with the Supreme Court of Virginia. (ECF No. 7-4). Reed claimed ineffective assistance of counsel, because his trial counsel never perfected an appeal to the Supreme Court of Virginia. Id. The Court granted the writ and leave to file a notice of appeal. (ECF No. 7-6). Reed then appealed to the Supreme Court of Virginia, which refused his petition. (ECF No. 7-7).

On June 9, 2011 Reed filed a new state habeas petition with the Supreme Court of Virginia. (ECF No. 7-8). Reed alleged three separate ineffective assistance of counsel claims, arguing his counsel was ineffective by failing to: (1) "challenge the absence of a transfer hearing in juvenile and domestic relations district court since Petitioner was a minor at the time of the alleged crime"; (2) timely appeal to the Supreme Court of Virginia; and (3) "properly prepare a defense witness who possessed exculpatory evidence." Id. On January 30, 2012, the Supreme Court of Virginia dismissed Reed's petition, finding claim (2) mooted by its prior grant of an

appeal and that Reed's allegations in claims (1) and (3) failed to satisfy the two-part test enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984). (ECF No. 7-10).

On March 19, 2012, Reed, proceeding pro se, timely filed this federal petition for habeas corpus relief pursuant to 28 U.S.C. § 2254. (ECF No. 1). In his federal petition, Reed asserts six grounds for relief, the three raised on appeal to the Court of Appeals of Virginia and the three raised in his state habeas petition. Id. On May 10, 2012, Respondent filed its Rule 5 Answer and Motion to Dismiss, along with a brief in support. (ECF Nos. 5-7). In accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(K), the Reed was advised of his right to file opposing affidavits, statements, exhibits and legal memoranda, as well as the possible consequences of failing to oppose the Respondent's filing. (ECF No. 8). He filed no reply, and the time for responding has now expired. Accordingly, Respondent's Motion to Dismiss is ripe for judicial review.

## II. RECOMMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Habeas petitions filed pursuant to 28 U.S.C. § 2254 challenge a state's custody over a petitioner on the grounds that such custody violates the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Before applying for federal habeas relief, however, a petitioner must first exhaust the remedies available in state court or demonstrate the absence or ineffectiveness of such remedies. 28 U.S.C. § 2254(b)(1). Therefore, before a state prisoner can apply for federal habeas relief, he must first give the state court an opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing. Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998). "To satisfy the exhaustion requirement, a habeas petitioner

must fairly present his claim to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997); see Picard v. Connor, 404 U.S. 270, 275-76 (1971). Respondent concedes, and the Court agrees, that for purposes of federal review, Reed's claims have been exhausted. (ECF No. 7 at 7).

Once a petitioner's state remedies have been exhausted, under the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant relief on any claim adjudicated on the merits by the state court, unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law" or "resulted in a decision that was based on an unreasonable determination of the facts." 28 U.S.C. §§ 2254(d)(1)-(2). A state court's decision is contrary to clearly established federal law if the court arises at a conclusion opposite to that reached by the Supreme Court on a question of law, or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court unreasonably applies clearly established law if it identifies the correct legal principle, but unreasonably applies it to the facts of the case. Id. at 413. Factual determinations made by a state court are "presumed to be correct," and a habeas petitioner has the burden of rebutting that presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see Hill v. Ozmint, 339 F.3d 187, 194 (4th Cir. 2003).

### 1. Ineffective Assistance of Counsel Claims

Reed's first three federal claims assert that he was denied the right to effective assistance of counsel. Specifically, Reed argues that his constitutional right to counsel was violated when

his counsel (1) failed to challenge the absence of a transfer hearing in juvenile and domestic relations district court, (2) failed to timely file an appeal to the Supreme Court of Virginia, and (3) failed to properly prepare a defense witness who possessed exculpatory evidence. (ECF No. 1 at 4-6). All of these claims were resolved on the merits by the Supreme Court of Virginia. Thus, to obtain relief in this court Reed must overcome the standard set forth in § 2254(d).

In reviewing an ineffective assistance of counsel claim, the relevant inquiry is whether "counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict suspect." Kimmelmann v. Morrison, 477 U.S. 365, 374 (1986). However, this presumption is not easily overcome, as "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland v. Washington, 466 U.S. at 687.

In order for Reed to succeed on his ineffectiveness claims, he must satisfy both the "performance" and the "prejudice" prongs of the two-part test set forth in Strickland v. Washington, 466 U.S. at 687.[1] To satisfy the "performance" prong of the test, petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. To satisfy the "prejudice" prong of the test, petitioner must prove that "there is a reasonable probability that, but for counsel's

---

[1] As both prongs of the test are "separate and distinct elements" of an ineffective assistance claim, Reed must satisfy both requirements of the test to prevail on the merits. Spencer v. Murray, 18 F.3d 229, 232-33 (4th Cir. 1994); see Strickland, 466 U.S. at 697.

unprofessional errors, the result of the proceeding would have been different." Id. at 694.[2]

Reed first asserts that his trial counsel was ineffective for failing to challenge the absence of a transfer hearing in juvenile and domestic relations district court. Specifically, Reed argues that since he was a minor at the time the crime was committed, he was entitled to be brought before the juvenile and domestic relations district court rather than the circuit court. (ECF No. 2 at 3-4). Reed alleges that his case could only be transferred to circuit court for trial as an adult in strict compliance with Section 16.1-269.1 of the Code of Virginia, and that, consequently, the circuit court lacked jurisdiction. Id. at 4-5. He contends that had trial counsel timely challenged the proceedings, he would have been entitled to a transfer hearing before the juvenile and domestic relations district court. Id. at 5. Reed argues that counsel's "failure to do so was unreasonable." Id. at 4. The Supreme Court of Virginia considered this claim on the merits and found that it met neither the "performance" nor "prejudice" prong of the Strickland test:

> The record, including the circuit court manuscript record and the affidavit of counsel, demonstrates that petitioner was charged with murder in violation of Code § 18.2-32, and pursuant to Code § 16.1-269.1(B), a preliminary hearing, rather than a transfer hearing, was held. As a result, petitioner's other charges were certified to the circuit court as ancillary to the murder charge. Therefore, counsel was not required to make a futile objection to the lack of a transfer hearing. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

(ECF No. 2-1 at 2). In so ruling, the Supreme Court of Virginia held that this claim failed to satisfy either prong of the Strickland test, because counsel's demand for a transfer hearing would

---

[2]The Supreme Court went on to define a "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; Lovitt v. True, 403 F.3d 171, 181 (4th Cir. 2005).

have been futile and unsuccessful. Id. Thus, Reed's first claim of ineffective assistance of counsel failed.

This Court must only determine whether the Supreme Court of Virginia's decision on this point was either contrary to or an unreasonable application of federal law, or if its decision was based upon an unreasonable finding of facts. 28 U.S.C. §§ 2254(d)(1)-(2). "Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." Yarborough v. Gentry, 540 U.S. 1, 5 (2003).

There is no evidence that the Supreme Court's determination was unreasonable. The Court found that under Code § 16.1-269.1(B) Reed was not entitled to a transfer hearing, but rather a preliminary hearing, in juvenile court, and that the attachment of ancillary charges to the murder charge in circuit court was proper. (ECF No. 2-1 at 2; No. 7-10 at 2). The requirement for a transfer hearing established in § 16.1-269.1 specifically excepts the charge of murder for which the juvenile court conducts a preliminary hearing under § 16.1-269.1(B). Therefore, the Court's holding that counsel's performance was neither deficient nor prejudicial is not unreasonable. Accordingly, the undersigned recommends that this claim be dismissed, because the Supreme Court of Virginia's application of federal Sixth Amendment law to Reed's habeas petition was not "objectively unreasonable."

Reed next contends that his counsel was ineffective for failing to timely appeal to the Supreme Court of Virginia the denial of his appeal by the Court of Appeals of Virginia. (ECF No. 2 at 5). Reed argues that since he professed his innocence and "intended to appeal any adverse decision," his counsel was ineffective for failing to make a timely appeal. Id. At 6.

Additionally, Reed asserts that counsel's error is prejudicial because it has prolonged his incarceration during post-conviction proceedings. Id. The Supreme Court of Virginia held that Reed's claim was moot, because "[t]he record, including the affidavit of counsel, demonstrates that petitioner filed a prior petition for a writ of habeas corpus, which resulted in petitioner being granted a belated appeal to this Court." (ECF No. 2-1 at 2; No. 7-10 at 2).

This ruling was not unreasonable. The Court's finding that Reed's claim was moot is not contrary to, or an unreasonable application of federal law, because any prejudice under a Strickland analysis was cured by the granting of a belated appeal. Additionally, Reed's continued incarceration is not prejudice which flows from counsel's allegedly deficient performance. Therefore, Reed has failed to show that the Supreme Court of Virginia's decision was contrary to federal precedent or unreasonable, or that its decision was based on a faulty determination of the facts. Thus, the undersigned recommends that Reed's second claim of ineffective assistance of counsel be dismissed.

Reed's third claim asserts that trial counsel was ineffective for failing to properly prepare his sister, a defense witness who possessed exculpatory evidence. At trial, Reed's sister testified that Matthew Foster, a Commonwealth witness, telephoned her before trial and told her "I know that Tiante didn't do it." (Trial Tr., p. 349). On cross examination, the Commonwealth's Attorney asked Ms. Reed if she brought her phone records with her to trial, to which Ms. Reed responded, "I didn't know I had to bring phone records. No, ma'am." (Trial Tr., p. 354). Reed contends that the Commonwealth's witness Foster falsely testified at trial that he never telephoned Ms. Reed. He specifically alleges that his counsel failed to instruct Ms. Reed to bring

her phone records to trial, seek a recess after Ms. Reed's testimony to obtain the records, or conduct an adequate investigation into Ms. Reed's phone records. (ECF No. 2 at 7, 10, 13). Reed argues that these errors by his counsel were "patently unreasonable" and prejudiced him in the cross-examination of his sister. (ECF No. 2 at 13).

The Supreme Court of Virginia addressed this claim on the merits and held that it did not satisfy either prong of the Strickland test:

> Petitioner fails to proffer the phone records to demonstrate that they would have corroborated his sister's testimony. Moreover, the record, including the affidavit of counsel, demonstrates that petitioner's sister did not have a recording of the conversation, so the records could not have been used to prove the content of the conversation. Further, counsel told petitioner's sister to bring the phone records to trial if she was able, but petitioner's sister told counsel she was not able. Counsel told petitioner's sister she could testify to what she remembered, and petitioner's sister did so. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

(ECF No. 2-1 at 3). In so ruling, the Supreme Court of Virginia determined that because counsel did instruct Ms. Reed to bring the phone records to trial if able, counsel did not act unreasonably, nor would it have made a difference as there was no recording of the conversation. Id. Therefore, Reed's claim failed both prongs of the Strickland test.

The Supreme Court's ruling was not unreasonable. Reed has not supplied phone records, recordings, or any other information which would corroborate his sister's testimony, such that a recess or further investigation would have been fruitful. Moreover, the Supreme Court's finding that counsel told Reed's sister to bring the records to trial is supported by trial counsel's affidavit, uncontroverted by the habeas record, and not unreasonable. Mot. to Dismiss at Ex. 2, Reed v. Dir. of the Dep't of Corrs., Record No. 111065 (Va. June 26, 2011). Accordingly, the

Supreme Court of Virginia's application of federal law to Reed's habeas petition was not "objectively unreasonable," nor its finding of facts suspect, thus, the undersigned recommends that this claim be dismissed.

### 2. Insufficiency of the Evidence Claim

Reed also claims the evidence was insufficient to convict him. (ECF No. 2 at 13-18). An essential element of the right to due process is that "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof-defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." Jackson v. Virginia, 443 U.S. 307, 316 (1979) (discussing In re Winship, 397 U.S. 358 (1970)). Therefore, a petitioner who alleges that the evidence was insufficient to sustain a conviction has stated a constitutional claim cognizable in a federal habeas proceeding. Id. at 321.

In reviewing a sufficiency of the evidence claim, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (emphasis in original). The reviewing court must consider circumstantial as well as direct evidence, and allow the prosecution the benefit of all reasonable inferences from the facts proven to those sought to be established. United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).

In Jackson, the Supreme Court expressly recognized that its holding accorded "full play" to the responsibility of the fact-finder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences. Id. In Wright v. West, the Supreme Court expounded upon Jackson, stating:

In Jackson, we emphasized repeatedly the deference owed to the trier of fact and, correspondingly, the sharply limited nature of the constitutional sufficiency review. We said that "all of the evidence is to be considered in the light most favorable to the prosecution"; that the prosecution need not affirmatively "rule out every hypothesis except that of guilt"; and that a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."

505 U.S. 277, 296-97 (1992) (emphasis in original) (internal citations omitted).

As relevant in Reed's case, first-degree murder in Virginia is defined as "[murder], other than capital murder, by poison, lying in wait, imprisonment, starving, or by any willful, deliberate, and premeditated killing." VA. CODE ANN. §18.2-32 (2012). In reviewing Reed's sufficiency challenge on direct appeal, the Virginia Court of Appeals summarized the facts of the case as follows:

Jamal Rogers was on the stoop at 2282 Afton Avenue shooting dice with [Reed], Matthew Foster, Jermaine Gulley, Lorenzo Allen, and Tiquan Jackson. Allen and Foster left the dice game early. Rogers later saw an SUV arrive. The driver was a female named C.C., and Coleman was in the passenger seat. . . . Rogers noticed that [Reed] began staring at the SUV. [Reed] then left the stoop, walked across the parking lot, and entered Cynthia Washington's apartment. Rogers later saw [Reed] leave Washington's apartment. Less than a minute later, he heard several gunshots and saw [Reed] shooting at Coleman. [Reed] was not wearing his coat. Two days later, Rogers asked [Reed] why he shot Coleman, and [Reed] said Coleman had robbed him some time in the past.

Matthew Foster was at the dice game with [Reed]. He testified that he saw [Reed] take off his coat, place a .40 caliber handgun into the coat pocket, and lay the coat on a nearby bush. As Foster was leaving the dice game, he saw Coleman and C.C. arrive in the SUV. Foster went across the parking lot to the apartment of his girlfriend, Washington. While exiting Washington's apartment, Foster passed [Reed], who was entering it. Foster then left the area. Foster explained that he earlier pled guilty to a firearm charge and was awaiting sentencing. He said the Commonwealth did not promise him anything for testifying. Foster explained he heard on the street that either [Reed] or Allen shot Coleman, so he initially told Detective Beadles it was Allen. Beadles did not believe him, and asked him to

11

take a lie-detector test. After failing the test, Foster told Beadles he did not see the shooting and did not know if Allen was the shooter. He said he provided Allen's name because he was locked up at the time, and he felt [Reed] might get out and hurt Washington, his girlfriend.

Washington saw Coleman and C.C. arrive in the vehicle. She testified that Foster came into her apartment for a short period, and when Foster left, [Reed] entered. [Reed] took off his coat, left it in her apartment, and then went back outside. When he exited, Washington saw a gun in [Reed's] hand. A short time later, Washington heard gunshots and saw [Reed] at the SUV holding the gun. She heard [Reed] say that Coleman was not dead. Washington initially told Beadles that she heard that Lorenzo Allen did it; after Beadles promised to moved her out of the area for protection, Washington told her the truth. Washington did not see [Reed] shoot Coleman, only with the gun and making the statement. She explained that she heard gossip that either Allen or [Reed] shot Coleman.

Beadles was the lead investigator in this case. She testified that she received several crime stoppers tips suggesting that someone named "T-rock" was the shooter. T-rock is [Reed's] nickname. On cross examination, Beadles explained that Foster initially said that he heard that Allen did it, but he later retracted that statement, as did Andrea Childs, who also initially implicated Allen then "took it back." Beadles testified that after investigating the crime, she was convinced Allen was not "out there at the time of the murder," and "[a]t no time did [she] ever believe Lorenzo [Allen] was the shooter."

(ECF No. 7-2 at 1-3).

Reed contends that the only evidence linking him to the murder is the testimony of Rogers, Foster, Washington, and Beadles. (ECF No. 2 at 17-18). He claims Rogers, Foster, and Washington's testimony was not credible and is insufficient to sustain a conviction, because each was testifying in exchange for either a reduced sentence or money. Id. Reed further argues that since several eyewitnesses told Beadles that Allen was the shooter, there is insufficient evidence

to support a murder conviction. Id. The Court of Appeals of Virginia held that[3]:

> The fact finder believed the Commonwealth's evidence and rejected the evidence presented by [Reed]. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt [Reed] was guilty of first-degree murder.

(ECF No. 7-2 at 3).

After reviewing the transcript of the trial and the opinion of the Court of Appeals, the undersigned finds no unreasonable determination of fact, nor any unreasonable application of federal law in the Virginia Court of Appeals' analysis. At trial, Reed had an opportunity to attack the credibility of the witnesses and did so. However, the jury heard all of the evidence and determined the credibility and consistency of the testimony. Factual determinations made by a state court are "presumed to be correct," and a habeas petitioner has the burden of rebutting that presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Reed has not met his burden. He has not identified any testimony or evidence which he believes the Court overlooked. Viewing the evidence in the light most favorable to the Commonwealth, the Court of Appeals' finding that this evidence was adequate to sustain Reed's conviction was not unreasonable, particularly given the "sharply limited nature of constitutional sufficiency review."

---

[3] Reed raised this claim on his direct appeal. The claim was rejected on the merits on direct appeal to the Virginia Court of Appeals, and in a summary order, the Supreme Court of Virginia denied Reed's appeal. Therefore, the Court of Appeals' decision on Reed's direct appeal is the highest reasoned state court decision on this claim, and it is presumed that the Supreme Court of Virginia's denial of Reed's appeal rests on the same grounds. See Roberts v. Johnson, 2:05CV331, 2006 WL 1881002 (E.D. Va. July 6, 2006) (citing Ylst v. Nennemaker, 501 U.S. 797, 804-06 (1991)) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim [are presumed to] rest upon the same ground.").

Wright v. West, 505 U.S. at 296-97. Therefore the undersigned recommends that the court dismiss claim four.

### 3. Due Process – Brady Claim

Reed next argues that the police violated his due process rights by not fully investigating Lorenzo Allen as a suspect and "by providing favorable treatment to witnesses who testified against [him]." (ECF No. 2 at 18). Reed essentially claims that detective Beadles conducted her investigation in bad faith and refused to follow up a lead on Lorenzo Allen, which, he argues, effectively destroyed exculpatory evidence. Id. at 19-20. Reed further contends that this amounts to a Brady violation. Id. at 20.

A State's duty to preserve evidence is implicated by evidence "expected to play a significant role in the suspect's defense." California v. Trombetta, 467 U.S. 479, 488 (1984). To meet this standard, the exculpatory value of the evidence must be apparent before it is destroyed, and "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Id. at 489. However, to constitute a violation of due process the criminal defendant must show bad faith on the part of the police. Arizona v. Youngblood, 488 U.S. 51, 58 (1988). Bad faith "turn[s] on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." Id. at 56 n.*.

Conversely, "the suppression of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. Brady v. Maryland, 373 U.S. 83, 87 (1963). "Evidence is 'exculpatory' and 'favorable' if it 'may make the difference between conviction and acquittal'

14

had it been 'disclosed and used effectively.'" United States v. Wilson, 624 F.3d 640, 661 (4th Cir. 2010) (citing United States v. Bagley, 473 U.S. 667, 676 (1985)). Brady, thus involves a three-part inquiry. The Court must find that the identified evidence was 1) favorable to the accused, 2) suppressed by the prosecution (either willfully or inadvertently), and 3) material. Banks v. Dretke, 540 U.S. 668, 691 (2004). Evidence that is favorable to the accused includes both exculpatory (whether requested by the defendant or not) and impeachment evidence. Id.; see United States v. Bagley, 473 U.S. at 676 (holding that the Brady rule includes impeachment evidence).

In analyzing materiality, courts must determine whether there is a "reasonable probability" that the result of the proceeding would have been different if the evidence had been disclosed. Kyles v. Whitley, 514 U.S. 419, 434 (1995). This showing "does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal." Id. (citing United States v. Bagley, 473 U.S. at 682). Rather, a petitioner can fulfill the materiality standard by showing that the cumulative effect of the suppressed evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Id. at 435-37. The materiality assessment requires the prosecutor "to learn of any favorable evidence known to others acting on the government's behalf, including the police, and to gauge the likely net effect of all such [favorable] evidence" and make disclosure when the point of reasonable probability is reached. Id. at 437. This cumulative effect analysis emphasizes the fact that when making a materiality finding, courts should consider the suppressed evidence collectively, rather than judging the

15

materiality of each item of suppressed evidence. Id. at 436; see id. at 437 n.10 ("We evaluate the tendency and force of the undisclosed evidence item by item; there is no other way. We evaluate its cumulative effective for the purposes of materiality separately and at the end of the discussions); Banks v. Dretke, 540 U.S. 668, 691 (2004).

Reed first contends that detective Beadles, in bad faith, failed to follow leads and properly investigate Lorenzo Allen, which resulted in the loss of exculpatory evidence in violation of due process. (ECF No. 2 at 19-20). Reed further argues that detective Beadles acted in bad faith by compensating witnesses for their testimony and by tampering with a certificate of analysis without the analyst's approval. (ECF No. 2 at 20). In sum, Reed imputes Beadles' alleged failure to develop a case against Allen to the prosecution as a Brady violation . The Court of Appeals addressed Reed's general argument and held that:

> The record shows that Beadles did investigate Allen, and it is replete with explanations by Beadles as to why she did not believe Allen was the shooting suspect. The record also contained evidence as to why the witnesses, some of whom saw the event and some of whom did not, were reluctant to initially identify [Reed] and instead indicated they heard on the street it was Allen.
>
> Although [Reed] attempts to characterize Beadles' failure to investigate Allen as a Brady violation, the record fails to show that the Commonwealth withheld exculpatory evidence. Appellant was aware throughout the investigation and at trial that witnesses initially implicated Allen.
>
> "'The purpose of the Brady rule is . . . to assure that [the defendant] will not be denied access to exculpatory evidence known to the government but unknown to him.'" Lugo v. Munoz, 682 F.2d 7, 10 (1st Cir. 1982) (quoting United States v. Ruggiero, 472 F.2d 599, 604 (2d Cir. 1973)). Thus, Brady is not violated if the evidence is made available to the defendant. See United States v. Wilson, 901 F.2d 378, 380 (4th Cir. 1990); see also Garnett v. Commonwealth, 49 Va. App. 524, 532, 642 S.E.2d 782, 786 (2007) (en banc) (explaining there is no Brady violation where Commonwealth timely discloses evidence). Moreover, the

Commonwealth's failure to investigate someone it did not believe was a suspect did not amount to a <u>Brady</u> or due process violation.

Assuming appellant properly preserved and argued this issue at trial, he has failed to demonstrate that he suffered a deprivation of due process or equal protection as a result of Beadles' investigation. The case law upon which appellant relied involved the government's failure to provide exculpatory evidence or evidence that could lead to the discovery of exculpatory evidence. Here, appellant's arguments are mere speculation and evince dissatisfaction that the police focused on appellant after fully investigating the case, and did not charge Allen with the shooting. Accordingly, the trial court did not abuse its discretion or commit reversible error in finding "no error of law."

(ECF No. 7-2 at 4-5).

The Court of Appeals' analysis did not address Reed's specific allegations that Beadles paid witnesses and tampered with the certificate of analysis. However, the state court need not state all (or any) reasons supporting its decision for it to be reviewed deferentially under 28 U.S.C. § 2254(d)(1). <u>Harrington v. Richter</u>, 131 S. Ct. 770, 784 (2011); <u>Bell v. Jarvis</u>, 236 F.3d 149, 158 (4th Cir. 2000). Even if no explanation is given, the petitioner must show that "there was no reasonable basis for the state court to deny relief." <u>Harrington</u>, 131 S. Ct. at 784.

The undersigned finds that the Court of Appeals' decision is not based on an unreasonable determination of fact, nor an unreasonable application of federal law. Reed has not shown that the Court had no reasonable basis to find that detective Beadles did not conduct her investigation in bad faith. Beadles was well aware that some witnesses initially implicated Allen. However, after investigating the case thoroughly Beadles determined that Allen was not the shooter and narrowed her investigation to Reed. Moreover, Reed has failed to proffer any exculpatory evidence that Beadles or the prosecution withheld from him in violation of <u>Brady</u>. Reed knew before trial that some witnesses had implicated Allen and was able to use this in his

17

defense. As demonstrated by the record, witnesses who initially implicated Allen were vigorously cross examined on this point (Trial Tr., p. 184, 189) as well as on their receipt of money (Trial Tr., p. 215, 243-45, 254-56) and detective Beadles alteration of the certificate of analysis. (Trial Tr., p. 290-94). Because these issues were fully disclosed to Reed before trial, they were not withheld and cannot sustain Reed's <u>Brady</u> claim. Thus, the undersigned recommends that the Court dismiss claim five.

### 4. Due Process – Evidentiary Claim

Reed's final claim for federal habeas relief relates to the trial court's refusal to allow him to cross-examine Rogers concerning a misdemeanor conviction for unlawful possession of a concealed weapon. (ECF No. 2 at 21-22). Reed argues that this limited his ability to cross-examine Rogers as to bias and as a potential suspect. <u>Id.</u> at 21. Reed raised this issue on direct appeal. The Virginia Court of Appeals reviewed the merits of Reed's claim and found it without merit. (ECF No. 7-2 at 5-7). Because the Court of Appeals reviewed the merits and denied the claim, the Supreme Court of Virginia's refusal of Reed's direct appeal satisfies the exhaustion requirement for this claim. <u>See</u> <u>Sanders v. Reynolds</u>, 214 Va. 697, 700; 204 S.E.2d 421, 424 (1974) (refusal of petition satisfies exhaustion for habeas purposes).

Nevertheless, claim six states no basis for a federal habeas relief, as it relates solely to a state court's application of state law. Ordinarily, "it is not the province of a federal habeas court to re-examine state court determinations on state law questions." <u>Estelle v. McGuire,</u> 502 U.S. 62, 67-68 (1991); <u>Weeks v. Angelone</u>, 176 F.3d 249, 262 (4th Cir. 1999). When a petitioner's claim rests solely on an interpretation of state law and statutes, it is not cognizable on federal

habeas review. Specifically, state court rulings on the admissibility of evidence are not ordinarily subject to review in federal habeas proceedings unless they present some constitutional claim. Maynard v. Lockhart, 981 F.2d 981, 986 (8th Cir. 1992); Buel v. Mitchell, 274 F.3d 337, 357 (6th Cir. 2001).

In this case, Reed has not alleged any federal constitutional dimension to the trial court's refusal to permit cross examination using the challenged criminal history. The legal arguments made in the federal petition, and the Court of Appeals' opinion analyzing the merits of the claim on appeal, both relate exclusively to Virginia evidentiary law. Because the trial court's application of Virginia law in this case presents no challenge to the fundamental fairness of Reed's trial, claim six is not cognizable in federal habeas relief and the undersigned recommends it be dismissed.

## III. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Respondent's Motion to Dismiss be GRANTED, and that Reed's petition for a writ of habeas corpus under 28 U.S.C. § 2254 be DENIED and the claim DISMISSED with prejudice.

## IV. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.     Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed

pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2.     A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

The Clerk shall mail a copy of this Order to the petitioner and to counsel of record for the respondent.

                                       /s/
                               Douglas E. Miller
                               United States Magistrate Judge

                               DOUGLAS E. MILLER
                               UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

September 5, 2012

### Clerk's Mailing Certificate

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

Tiante Lavonne Reed
#1201321
Sussex II State Prison
24427 Musselwhite Drive
Waverly, VA 23891

Susan Mozley Harris
Office of the Attorney General
900 E Main St
Richmond, VA 23219

Fernando Galindo, Clerk

By _____
            Deputy Clerk

Sept. 6            , 2012

21